Good morning, Your Honors. Excuse me. Steve Daner on behalf of the plaintiff and appellant NL. I'm asking to reserve five minutes for rebuttal. The heart of the issue here today is whether or not there are sufficient allegations to plausibly show the defendants acted under color of law. Now here the private hospital provided urgent medical treatment or care. Instead, the defendants contract with the County of Los Angeles to perform non-urgent forensic examinations. Let me ask you, just I want to try to cabin in what we're talking about here. Let's assume that the police had gone to the scene of some reported abuse, found a child there who they thought was a victim, and just taken him to a hospital with which they had no contract or collaborative agreement. And the hospital has conducted exactly the same exam. Would that hospital be acting under color of state law? I think that that situation is different here in regards to that. So tell me, tell me, would that hospital be acting under color of state law? I believe that in this, in that You're the expert on this area. You're making an argument to us. So tell us where in the, tell us whether or not that limited set of facts would have given rise to state action. I think that if the child exhibited symptoms of needing urgent medical care or treatment, then that might, that that would. Sure, police come in to see if they see a child that's apparently injured. He appears to be a crime victim. Then I think that you would need. They call the ambulance. The ambulance takes him to the hospital and the hospital performs exactly the same forensic examination as NL underwent. Do you have a 1983 claim against that hospital? I don't think you would in the sense that that is then a government official trying to get medical treatment for a child. Okay, so you start from that baseline. Tell me what additional facts here, in your view, turn this into state action. First off, we have a contract between the Children's Hospital and the state actor, just because there's a contract. Is that right? Well, I believe that if you look at Lopez v. Department of Health Services and West v. Atkins, for purposes here, all we need to do is show that there's sufficient allegations and the light most favorable to plaintiff to show that it's plausible that we have a claim for a leave of absence. That doesn't answer the question. The question was whether having a government contract, per se, means that you're a state actor. The person who sells tires for the trucks that the state uses, or any number, there are hundreds of government contractors. Are they all state actors for purposes of 1983? The difference here is we have a contract. Say yes or no question. You haven't answered the question. Does a contract, per se, make the contracting party a state actor? I don't believe so, but here, and then when you have a contract between the state and the county, you have a contract between the facilities that the county uses and actually operates themselves to provide these type of examinations. So when you have a contract to provide those type of medical services. So your argument is that they're providing a governmental service because it's, in effect, outsourcing a service that the county would otherwise do itself? Yes, if you look at Department of, sorry, Lopez v. Department of Health Services, when there's that contract in place to satisfy. I want to make sure I understand your point. It's not simply that there's a contract in place. It's the contract isn't, that the contract requires the hospital to provide services which are governmental in nature. Yes, here the contract is. So what is the service that's governmental in nature here? It's not the medical treatment of the child, is it? There's nothing, there's no medical treatment of the child at issue. So what's the service that's governmental in nature that you see the hospital providing? It was a forensic examination to determine whether or not there was child abuse. There was no medical treatment. It's not to treat or heal this child. And why is that a governmental service? When we look at the machinery under Kea P. v. McIntyre, when they've come in and functioned within the machinery of the Child Protective Agency, designed to determine if there's child abuse, and coupled with the fact there's actually locations in the County of Los Angeles where the government actually operates. Well that's some evidence that this is a governmental service, but your argument wouldn't be any different if the government didn't operate any of these, if it just contracted it out entirely. That's correct, Your Honor. Because I take it your argument is this is criminal investigation that's going on. Yes, there is an investigation for child abuse. That's a governmental job, that even if you outsource it, it's still a governmental service. Yes, that's correct, Your Honor. And so does that mean that every aspect of that governmental service then is governmental? Because this was simply a forensic examination that, let's say the police officers did not have the expertise, you know, to conduct because it's a medical exam, right? This examination, when we look at, it's a forensic examination, it's not to treat a person. But it's still a medical examination. If the three of us looked at an alleged victim and looked at the genitalia, the doctors had to, we may see something quite different. We don't know what we are looking for, but the doctors know what they're looking for, is that right? That's correct. And in that case, under Wallace and Green v. Cameron, his progeny, you would need a warrant, you would need... Put aside for a second whether or not there were any constitutional violations here. We're not at that stage of this case. The judge dismissed it, as I take it, because he thought your client wasn't a state, or the hospital wasn't a state actor, right? Yes, that's correct. I believe there was a footnote that kind of tied back the first opinion, the first order, but the order that we are, the last order, was for there to be no state actor. So, I want to, let's assume that when NL gets brought to the Children's Hospital, he's got obvious injuries, and they treat the injuries, and they also do a forensic examination. Is the treatment of the injuries state action? I believe that seeking the medical treatment would not constitute the state action under that purpose. Well, seeking it might, because it might be the police who are seeking it. The question is, is the hospital a state actor when it provides medical care? If you will, actually, now that I think about it, if you take this and you compare it to some of the other services we have relating to the is been found to be a state actor. But they're not providing medical treatment under contract with the state, are they? Are they only doing the forensic examination? Or does the contract also require medical treatment of children that they bring in? The contract at this stage, the exact terms of the contract, we do not have before us. We have evidence. You have a collaborative agreement that's in the record to deal with child abuse, potential child abuse victims. We have the deposition testimony discussing the forensic aspect of the... Can I take you, of course, for a second? This is a strange case in the sense that you litigated it in state court, dismissed the hospital, and then came back and sued them in federal court. And so we've got all these depositions and other things from the state court litigation attached to the complaint. Do we treat everything, and this is a motion to dismiss, do we treat everything in those depositions as if they were true? What do we do with that that attached stuff? Yes, I believe your honors do treat that as it's true. What we have here is it's supporting the allegations that are in the complaint. So we're showing with that that they're not conclusory allegations. That we actually have here support for our statements. In those depositions there is talk of the contracts... With that in mind, I want to get back to the footnote you talked about. Is this just before us on state action, or did the judge make any findings that there were no constitutional violations? If you give me one second I could take a look to find the exact... The briefing is all about state action. And so, I mean, I think there's a plausible, from my sort of narrow perspective, to the extent that there's an argument that the Constitution requires the parents consent under certain circumstances and those circumstances, except under exigencies, and those exigencies weren't shown here, there's a plausible allegation. It may fail on summary judgment. The hospital may have qualified immunity. But I'm just, I just want to know whether or not the judge... What else underlies the judge's order here? So in the order, it's on Appellate's Executive Records, page 14, footnote 5 at the bottom of the page, the judge, the district court judge, incorporated his prior order by reference into this order. So effectively, even though he didn't discuss it, some of that aspect did come into play into this order. But the heart... So what does that mean? What did his first order say? His first order didn't touch upon state action. He actually said it there, we're not looking at state action. I'm just looking at the constitutional deprivation, and I'm finding that there was no constitutional deprivation alleged. So that's another issue, is that we have not had any chance to amend the state action. But here's my problem, and your briefing doesn't address whether there's a... that whether the judge erred in his first ruling in finding a non-con... We do address that there is a constitutional violation that occurred in the briefing. It isn't that we discussed Wallace and Green and how their did occur. I thought you did that in the context of saying that you've plausibly alleged one. Is that your... Yes, that we would be plausibly alleged. I got you, okay. And I want to get back for a moment, though, to Judge Hurwitz's prior hypothetical, and I want to ask whether the fact that the the mission changed and and then they treated the patient, does that take that out of the realm of being the acts of a state actor, simply because that was not in the course of the criminal investigation, or was not part of the criminal investigation? So, Mike, correct me if I just want to make sure I'm understanding. You're asking if the examination had yielded an injury and then they needed to treat the child, but no, under his hypothetical, he said, okay, they examined her forensically. That's part of the contract. That's part of the investigation. But then they treat her. When they treat her, is the hospital still acting as a state actor, even though the treatment is not a part of the criminal investigation? I think that there's, but under the terms of the contract and knowing the joint collaboration, it's, I don't know off the top of my head, I would have to look back at the record to see what their collaboration is for. Well, they're not joint collaborators, though, with respect to the treatment. They're only joint collaborators, at least under your argument, with respect to the forensic examination. Is that right? I believe that's that's correct, but I'm not sure exactly what the evidence shows. Let me ask you this. This is something that concerns me. Is one of your issues with Children's Hospital the fact that the examination itself was intrusive and the parents weren't there? Yes, that does go into play with the... Is there another way that Children's Hospital could have performed a forensic examination that would have been less intrusive? I believe that once you have a, for the undercover law argument, once there's this contract in here, collaborate, participate, assist in the machinery of a child abuse investigation along with a government agency, then they're acting under a color of law. So, irrespective... His question, as I understood it, and I was curious about this as well, is there an allegation that the way in which this examination was conducted was improper in the sense of being more intrusive than it would have otherwise been if they'd been just... or not with a contract and just... There is that allegation, Your Honor. What we have here is there's no sexual abuse allegations at all. No, no, that's not the question asked. The question asked is, assume you're examining a child that you think has been the subject of sexual abuse, and that apparently is what the hospital was told. Did they conduct their examination in some way that was improper? Put aside whether consent is required, put aside whether a warrant is required. What we're trying to get at is whether or not you're making an allegation that even putting aside all these things, it was a bad examination. Yes, Your Honor, we are. What I was going to be getting at is, they did a highly intrusive examination here, looking at the child's genitals and rectum, performing a full sexual abuse allegation when there was no sexual abuse... I know, but that's not what we're asking. So, and this is not a trick question. We're just trying to find out whether you're making sort of a malpractice allegation. Did a good hospital... Let's assume, for the sake of this question, that there is a validated claim of sexual abuse as to a particular child, and that the parents have been notified or a warrant has been obtained and all that has happened. Would the examination that is done in those circumstances be any less intrusive, or would it be the same investigation of the child as was done here? It's all the examinations, from what I understand, from the... They're all the same, right? They're all the same. They do the same intrusive examinations. You're not alleging that the hospital did something extra here that was, compared to normal examinations, that was wrong? And that this forensic examination is what they performed? The standard forensic examination. Yes. And so, the hospital conducted this standard forensic examination, you know, consistent with its contractual responsibilities. In other words, the state didn't tell the hospital how to conduct the examination. This is just a standard forensic examination. Is that right? I don't believe that they said what type of examination to perform. They certainly didn't tell them how to perform it, did they? I don't believe so. Did the hospital decide... Does this record or this complaint allow me to make any inferences on this? Did police bring a child to the hospital and say, we suspect child abuse? Just assume that for a moment. Okay. Does the people in the hospital then determine the nature of the examination to be given, or do they have a set of instructions from the police about what to do? Or can I tell from this record? I don't believe that that's specifically in the record, but I could double check on that to see about answering that. I know you make allegations about them collaborating in a team approach. I'm just trying to find out whether or not the hospital examiners exercise independent judgment about what to do when the child is brought to the hospital, or whether or not they have a set of instructions about what they must do. The only inference that I could draw from that to try to answer your question is that the composition of the CARES team that's operated by the hospital that performs this examination is comprised of government social workers, medical personnel, law enforcement, prosecutors. So to some extent, that group decides what the... Whoever's present at the moment decides what the appropriate examination is. I would just say that for an inference, you could take a look at that and see that there's a collaborative effort to determine for the extent... Thank you. You've exceeded your time, but we asked a lot of questions, so you may have a minute for rebuttal when your time comes. Thank you, Your Honor. Good morning, honorable judges. Don't you want to wish good morning to all of us? That's all right. I missed that one, sorry. That's me joking. I'm sorry. I wanted... Would you introduce yourself for the record, please? I'm sorry. I'm David Pruitt. I'm on behalf of the Defendants and Employees Children's Hospital Los Angeles and Children's Hospital Los Angeles Medical Group. And I would like to start off by pointing out that in a case where there are allegations that a private party is a state actor and subject to liability for violation of federal statutory constitutional law, that there is a strong presumption against such a claim as a matter of law. And that is a criteria that takes this case out of, if you will, some of the normal standards for reviewing a motion to dismiss that the ruling here... Let me ask you a question about that. Yes. Let's assume that instead of the arrangement we have here, the police or the county hires your clients and says, It's really important that we look at these children at the scene. We could employ doctors to do that and put them on our staff, but we don't have enough demand for it. So we're going to hire your client to come to the scene with us and help us do a forensic examination at the scene. And that examination occurs. Would your client be a state actor under those circumstances? Well, no, because... Even though the doctor's riding around with the police and helping them with the investigation, they still wouldn't be a state actor? Not based upon the way that the facts are framed here. You know, in this instance, Children's Hospital Los Angeles did not decide anything about the direction or target of any investigation. Well, but under my circumstance, neither would the doctor. The police would be going to the scene. We just need to have a doctor on hand because when we show up there, we might need one to do a forensic exam. And so rather than put a doctor on staff, they contract with your client to have the doctor ride around with them. And they show up at the scene, and then exactly what occurs here occurred. It just occurs at the scene, not at the hospital. You're saying that wouldn't be state action on the part of your client? Well, I think the issue boils down to under whose authority is the examination done? Well, it's done under state authority. Nobody doubts that. Otherwise, we wouldn't be here. The examination is done because the state has brought somebody to you to examine. It's not NL didn't walk in off the streets and say, I have a problem, I'd like to be examined. But that's the crux of the issue. I mean, you know, plaintiff's claim is in actuality that an examination was done without the parent's consent or without a warrant. And the response to that is those two factors may have been true. But the defendant still had the instruction of an authorized government authority to do the examination. And that's what changes this. Let me, again, I hate to keep bothering you with my hypotheticals. You're not bothering me. But they help me focus on the case. You agree that if one of your clients was a doctor at a public hospital under these circumstances, what that doctor did would be state action. Perhaps. Even if the police, even if he had no choice because the police brought the person in. I agree that they would be a government official. It seems to me you've got a wonderful defense on the merits, but that's a separate issue. The question is, would it be state action if your client were the doctor at L.A. County Hospital? I agree that that would be a government actor. The thing that I'm, the only thing I'm hedging against in responding to the question, however, is that simply being a government official doesn't mean that you're subjected to constitutional liability or Section 1983 liability. Absolutely. You can be a government official and have qualified immunity. You can be a government official and not be the cause of the constitutional violation. I'm just focusing on state action. Right. And I think that that last part is the key, not be the cause of the constitutional violation. You know, for instance, I mean, you know. That's not the theory that the district court raised. It is. It's part, as I believe my colleague accurately acknowledged. By incorporating the previous order? Yes. Okay. So you read the previous order as saying even if what the hospital did, had it been done by a state actor, might have violated the Constitution, it was not the cause of the injury to your client, to his client. Right? That's correct. The hospital was not the cause. Because why? I'm having difficulty understanding that part of what the client is saying, or Enel is saying, is I had a right not to be examined without my mother there, or my father there, or without their consent. And we have cases that recognize that as a constitutional right. Wasn't it your client that decided to conduct the examination without parents present? No. So does this record tell me that the police said do not call the parents? Yes. Where does it say that in the record? In the complaint. The complaint specifically alleges that when the DCSF official went to the home where this plaintiff was residing, that she showed a badge to express her authority. She took custody of the child. She searched the house for two hours. I understand all that. Well, fast forward to the hospital. They bring the child to the hospital. Is there something in this complaint that says that the state official said to the hospital representatives, and in conducting this examination, even if your normal process would be to obtain consent from the parents or to have them present, you were instructed not to do so here? Yes, because the ‑‑ Tell me where that is in the complaint. I didn't see it. You may be inferring that from the usual practices. I'm asking where that is in the complaint. The complaint explicitly states that the parents were forbidden from being with the children. We know that. My question is, did your client take part in that process to keep the parents out? No. As I read the complaint, it says, although the hospital's normal processes are to call parents and to get consent when children are brought in, it decided not to do so in this circumstance. Doesn't the complaint say that? I certainly do not recall the complaint saying that, and I've looked at it very carefully. My recollection of the complaint is that the DCFS officials took custody and then took the child to the hospital and said we want the child examined and we have custody of the child, period. You disputed in the first motion to dismiss whether the child was in custody at all, right? Because that's part of the judge's order in the first motion to dismiss. The judge says, I can't tell when the child was taken into custody because I don't know whether or not them bringing the child to the hospital was custody for purposes of the juvenile law. No, what the judge was trying to narrow down in that context, and I didn't ever dispute that the child was in the custody of the DCFS, what the judge was trying to identify at that moment was whether the examination was done while the child was still in DCFS custody. And then when the complaint was amended, it was demonstrated that the child was under DCFS custody at the time. Doesn't that undermine the judge's first dismissal? In other words, his first dismissal was you haven't shown causation because you haven't shown that at the time of the examination, the child was in DCFS custody. And then the complaint was amended to allege that the child was in DCFS custody at the time, right? Doesn't the causation argument that the judge dismissed the complaint on the first time go away? I may not be understanding your question, but I disagree with the suggestion that the idea of causation went away. And I also would point out that even under the four tests that are used to determine whether or not there's a state actor status, that the formulation includes a determination of whether or not in acting as a state actor the private party did something that was in violation of the plaintiff's rights. It doesn't go away when you apply the tests. I understand, but the judge's first order doesn't say, I'm finding that if you were a state actor, what you did here was constitutional. The judge's first order said you haven't shown any causation. And that's different than finding that the actions didn't violate the Constitution. So I may be misreading it. The judge says you've got no injury in fact that arises from the actions of the hospital. And partly the judge bases that order on the notion that I don't even know if you were in custody when you went to the hospital. And then they amend the complaint to allege that you were. But Your Honor, can I put this into context, please? Sure. Judge Berat, his order, the first order, clearly indicates that it appears from the complaint that the child was in the custody of the DCFS at the time. He allowed the plaintiff to amend the complaint to clarify that. And if in fact that inference that was being drawn by the judge at that time was incorrect, the plaintiff had the opportunity to correct that. So the first time around, Judge Berat looks at this and concludes that it appears that this child is in DCFS custody at the time of these events and that this examination was only done at the behest of DCFS authority. However, he says, I'm going to give deference to the possibility that the plaintiff could allege some differing facts from that. And if the plaintiff were then to allege some facts that indicated that children had done something at a point in time where the child was not in DCFS custody, that might change things. Okay, so let me understand your position. And I apologize for coming back to this. Your position is that as long as the child was in DCFS custody at the time the examinations were done, the hospital could not be a state actor. Correct. Because under, let's put it this way. We have all these prison cases where people provide medical care to prisoners. Or food. Who are in custody of the state. Or food. And we treat them as state actors if a constitutional violation is alleged. Why is the custody here, because it's not inside a confined prison, any different? It's because in those cases that you're referring to, the standard that is violated is that the medical professionals are given complete responsibility relative to the medical services that a prisoner will or will not receive. And they make the decision from start to finish. They have complete control over that. And if they act with deliberate indifference, then they are subject to a constitutional claim because they have complete control. They decided whether or not the patient would get an appointment. So in your view, it comes down to the fact that there's no discretion on the part of the hospital. That is, they bring in a child and say, you must do the standard examination on this child. And the hospital lacks discretion to do otherwise. Is that what differentiates it? That's correct. So where's that in the complaint? Again, I'm sorry, but it's all over the complaint. It's stated over and over again that this was done at the behest of DCFS. It's repeated. It's not at all contested that, look, we're only here because they brought the child to the hospital. Surely it was done at the behest of the state. The question Judge Graber asked is a different one. Where in the complaint does it say that once the state shows up with the child and says sexual abuse victim, that the hospital must do exactly what it did under these circumstances? The doctor can't look at the child and say, I don't need to conduct this extensive examination or perhaps I ought to call the parents or do something. Your argument is that your clients, in effect, were automatons once the child was brought there. That may be true. I'm just trying to find it. And you may be able to show that on summary judgment. I'm asking, how can I infer that from the complaint? Well, under Welfare and Institutions Code, Section 324.5, the state had the authority and they exercised it to take custody of this child. They then became the parent for purposes of giving consent for an examination. When they gave consent for examination, they were the parent. So, although literally, that's a functional parental relationship. That doesn't answer the state action issue. Maybe that will be why you win, but how does that not make the hospital part of their deal? And if I can piggyback on Judge Hurwitz's question, which I want to know simply, going back to Judge Graber's question, what discretion did the hospital exercise here? They exercised discretion of actually whether or not to do the examination, but they had permission to do the examination from the state. The state asked them to do it. So the hospital had the right, then, are you telling me, to decline to do the examination? Sure. Under the contract, the police could bring a child to the hospital and say, we want you to do a forensic examination, and the hospital could have said, no, the parents are here, so we aren't going to conduct it. Yes, and Judge Barat acknowledged that in his orders. And so, here, the hospital then opted to conduct the complaint irrespective of the presence of the parents. Is that right? The parent was the state because they had custody and they had the legal authority to ask for an examination. And when they consented to an examination, there was no reason for the providers to decline to do it. There was nothing inherently illegal about doing the examination. The examination, as you pointed out, was done correctly, and there was nothing that would suggest that there was some falsification of evidence that would be for the purpose of depriving the actual parents of custody. There was nothing done by this hospital. The hospital had the discretion to look behind the legitimacy or the efficacy of the police custody and determine whether it should proceed with the examination regardless of the fact that the biological parents were present. The hospital had, first of all, the ability to look behind the circumstances and see that there was a legal custodial relationship that the state was exercising at that time, and that's not disputed. And additionally, relative to the circumstances that led to that custodial relationship between the state and the child, the defendants knew that the brother was in the same hospital with brain injury because of suspected abuse. So those circumstances, if you're looking at whether or not they could look behind it and whether or not they... I think you're going beyond where they have to go because the state authorized them to do the examination. But if you're going to say that they could... Let me interrupt you for a second. Your argument here is that they acted perfectly reasonably under the circumstances, and I think I may agree with that. My question is, is that what's before us? In other words, that's not really my argument, though. My argument is that they never put on the clothes of state authority. They never closed themselves with state authority. They did not do that. In some instances to clothe themselves with state authority, in some instances not. Is that what you're saying? Are you presuming that they are state actors for some other purpose because that's not before this Court? I'm not presuming one thing or another. I'm simply asking you a question. I'm trying to figure out what you're telling us. So are you saying that they could exercise the discretion to act as state authorities and then sometimes not? I'm saying they had the discretion to act as medical providers or not for any particular person at any time. The contract did not require them to see any person at any time. It did not require them to take custody of any person for any reason. It did not require them to investigate or determine whether or not somebody was... in determining that the police, A, were the parents, and, B, to conduct the investigation or the forensic examination without the biological parents present. They made that independent decision, right? No. They were the breathalyzer when, to use an analogy, the police pull over someone and ordinarily I have the ability to decline to submit to a breathalyzer if I'm just walking around in the street, but if I'm driving, I have been implicitly given consent to have a breathalyzer done. And so the police do that. And we may dispute whether the police should have done that. There's no contract. Well, yeah, sure there is. There is a contract. Let me just finish really quickly because the breathalyzer company... You just come up with the false premise and so you can't answer my question like that. I want to know there is a contract in this case. Am I correct? There is. There's a contract between the state and the hospital. All that's alleged in this situation is that there's a contract that if the state needs an examination, the medical providers are willing to do it. There's nothing more than that. But under your view of that contract, they could have said when they brought the child to the hospital, we're too busy today or we don't want to see this child or even perhaps we'll see the child but we want to make sure that the parents have been notified first? Yes. And to the extent that the police are using this as a resource, I'm comparing this to the blood lab, to the breathalyzer. If the police do something wrong in taking someone into their custody and then they use evidence from a laboratory to help support their claim, that doesn't mean that the laboratory, because it's contracted to do this work, put on the clothes of a state actor for the purpose of depriving this person of their constitutional or federal rights. And that's my analogy. I'm sorry. I know I interrupted. I'm sorry. I'm just trying to get to this point. What we're trying to understand is your argument that they're a breathalyzer. Breathalyzer has no discretion. Breathalyzer takes the breath that comes in, spits out numbers. Sure. Perhaps people doing lab tests at the direction of the state have no discretion. Right. If you're looking at blood tests. So that's why we're asking, and you need to help us on this, whether your client, when this child shows up, is a breathalyzer. They just put the breathalyzer next to the child and measure stuff. Or the client can say, no, not today. Or I'll examine this child, but we'll decide what the nature of the examination is. I would suggest that either way. That's why I'm saying it. Either way, you're not a state actor. I'm suggesting either way. I understand your argument, but I'm trying to find out a fact. I think you seem to be saying once they bring the child to the hospital, my client has complete discretion about what it does medically. Yes? Correct. And I will just point out that the plaintiff has conceded two essential points. First of all, that they have no issue with the way the examination was done. Second of all, they have no issue with the fact that the hospital or the medical group at some point contacted the police to report suspicions of abuse relative to his brother. Those are not the things that they're saying clothed the hospital or the medical group with any sort of state actor status. The only thing they're focused on is the fact that the doctor examined the child when someone with authority, legal authority, to do so brought the child to the doctor and asked for such an examination. Counsel, you've way exceeded your time, and I think we understand. By seven minutes. Sorry about that. Thank you. I appreciate you asking questions and allowing me to respond. Mr. Daynor? Thank you, Your Honors. I'll try to keep this as brief as possible. Maybe you can't because I want to ask you a question. Your colleague cites a state statute that says the police, when they have a child who believes has been subject to abuse, can bring that child, can take custody of the child and act in loco parentis and bring the child to the hospital. Put aside for a second whether or not there were enough facts here that led the police to reach their conclusion. Maybe they were totally off base. Looking at this from the hospital's perspective, why aren't they entitled to qualified immunity under that law? When the police show up and say, we have a child that we have probable cause to believe has been the subject of sexual abuse, they may be dead wrong. They bring the child to the hospital. They say, we've taken custody of this child. You allege they have. Why isn't their permission to conduct the examination sufficient to immunize the hospital from a 1983 claim? Well, what we have here, Your Honor, is the sole claim for relief here is a Monell claim against the hospital. And under Monell, you cannot get qualified immunity. Well, you can't have a Monell claim against the hospital. The Monell claim is the hospital's policies and procedures. Oh, so your argument is because the hospital is a state act. Monell is only for municipal liability, though. So you're arguing that the hospital is a municipality as opposed to a state actor? Well, once the argument is once we have – so the Monell issue is – No, no, you can be a state actor without being a municipality. Monell liability only applies to municipalities, doesn't it? I believe that – I don't have the exact law in front of me. I can get that to you because the Monell issues are not raised here. They're never challenged below. But the Monell issue is against the hospital's policies and procedures of what caused the underlying violation. As a result, there's going to be no qualified immunity. Right, right. No, I understand that. But I don't think that's a Monell claim. What you're really saying is the hospital was a state actor and violated the Constitution because that's what its policies and procedures did. You're not seeking to impose liability on the hospital because of what the state did. You're seeking to impose liability on the hospital because of what the hospital did. Monell claims are derivative claims. Are you claiming that the policies and procedures are unconstitutional because of the manner in which Children's Hospital exercised its discretion, that is, to proceed with the forensic examination, or the manner in which it conducted the examination itself, or both? It's both, Your Honor. And to actually go back to one of the questions that was touched upon earlier, here we do have allegations that it was the hospital's policies and procedures to not notify a parent and to exclude the parent during those examinations. Was it the hospital's responsibility to do that, or was it Child and Family Services' responsibility to do that? I believe once they're acting in a contractual relationship and acting under the procedure. Why is that so if the child is in the custody of the Children's Services, which gives them the authority to say, we are acting as the child's parents and we request or demand this examination? That's the question I was asking. The statute says when you show up at a hospital with a child in the custody of Children's Services, they're, in effect, local parenters. They can ask for ñ now, you can sue the heck out of them, and you have and you've settled with the state. I'm asking, why under those circumstances, even if the hospital is a state actor, why isn't it entitled to qualified immunity if the statute tells it it's supposed to do what it did? One aspect of the statute is actually it does not just allow an examination. The first stage of that requirement for the statute is that the social worker consult with the hospital to determine whether or not an examination is required. So there's going to be that aspect that differs from just saying, hey, it's under DCF's custody. But that would be a statutory violation. The social worker is acting in loco parentis in that circumstance, is it not? In Wallace, it actually says no. In Wallace, a similar situation where the examination occurred before the detention hearing, after the child was seized, and this court said that still is going to be a violation. Right, and that was the issue going on with the first complaint. But it's not the issue going on now, is it? Everybody agrees the child was in custody. Yes, that's correct, Your Honor. He was in custody. So if the child is in custody, is your opponent correct in saying that the state is acting in loco parentis at that point? They're not able to come in and get an examination without the... Even if they're acting in loco parentis? That's correct, Your Honor. If you look at Greene v. Camaretta, they had a court order to perform the examination. They had parental consent to perform the examination. Yet it still was a constitutional violation to exclude the parents from that examination. Was that a situation in which there was someone else acting in loco parentis as here? Yes, I believe it was at that time the CPS agency had custody of the child and they brought them to the one where the examination occurred at the hospital, and they still said you have a constitutional violation of this. In addition, Greene v. Camaretta is instructive in that it had a similar statutory language allowing examinations. They said even though that's there, we're still finding a constitutional violation because during the examination the parents were excluded. I'd like to touch back upon real quick one question that Your Honor asked relating to if this situation was a public doctor in a public facility, they would be acting under color of law. Now West v. Atkins... I don't think your colleague disputes that. But in West v. Atkins it says that it doesn't matter whether or not the contractual agreement generates the same benefits and obligations that a state employee would have. Even if it's a lesser agreement, you're still going to have... No, I understand. The question is whether you've shown enough to make these private actors public actors. And I was trying to draw the boundaries, and I think your colleague agreed that if it was a public actor, it would be state action. So that's not a disputed issue. My point is that if we can all agree then that a public doctor in a public facility, this would be under state action, the contract, even if it's lesser than that state employment contract under West v. Atkins, is still sufficient to show that they acted under color of law. So I think we have your position, and you've exceeded your time considerably. And I think we understand the point that you're making now too. Okay, Your Honor. If there's any further questions, I can try to answer them. If not... I think that one. All right. Thank you, Your Honors. Thank you. We appreciate the arguments from both counsel. They've been very helpful. And the case is starting to be submitted, and we stand adjourned for this morning's session. Thank you. Thank you. All rise. Court for this session stands adjourned.
judges: Graber, Hurwitz, Marbley